# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

STEPHEN BUSHANSKY,

    Plaintiff,

v.

TALLGRASS ENERGY, LP,
WILLIAM R. MOLER,
MARCELINO OREJA ARBURUA,
GUY G. BUCKLEY,
ROY N. COOK,
THOMAS A. GERKE,
WALLACE C. HENDERSON,
MATTHEW J.K. RUNKLE, and
TERRANCE D. TOWNER,

    Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Tallgrass Energy, LP ("Tallgrass" or the "Limited Partnership") and the members of the Board of Directors (the "Board" or the "Individual Defendants") of Tallgrass Energy GP, LLC ("TGE GP"), the general partner of Tallgrass, for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission

("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Tallgrass will be acquired by affiliates of Blackstone Infrastructure Partners ("Blackstone") and affiliates of Enagás, S.A. ("Enagás," together with Blackstone and its affiliates, the "Sponsors"), through TGE GP, Prairie Private Acquiror LP ("Buyer"), and Prairie Merger Sub LLC ("Buyer Sub") (the "Proposed Transaction").

2. On December 17, 2019, Tallgrass issued a press release announcing that it had entered into an Agreement and Plan of Merger dated December 16, 2019 (the "Merger Agreement"). Under the terms of the Merger Agreement, each issued and outstanding Class A share representing a limited partner interest of Tallgrass, other than shares held by the Sponsors, will convert into the right to receive $22.45 in cash (the "Merger Consideration").

3. On January 21, 2020, Tallgrass filed a Schedule 14A Preliminary Proxy Statement (as amended on February 11, 2020, the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Tallgrass stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) Tallgrass management's financial projections; and (ii) the data and inputs underlying the valuation analyses performed by the conflicts committee of the Board's financial advisor, Evercore Group L.L.C. ("Evercore"). Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Tallgrass's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Tallgrass maintains its Operations office in this District. Moreover, each of the Individual Defendants, as Tallgrass or TGE GP officers or directors, has extensive contacts within this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Tallgrass common stock.

9. Defendant Tallgrass is a Delaware limited partnership with its principal executive offices located at 4200 W. 115th Street, Suite 350, Leawood, Kansas 66211. Tallgrass owns, operates, acquires and develops midstream energy assets in North America. Tallgrass's common stock is traded on the New York Stock Exchange under the ticker symbol "TGE."

10. Defendant William R. Moler ("Moler") has been Chief Executive Officer ("CEO") of TGE GP since November 2019 and a director of TGE GP since February 2015. Defendant

Moler previously served as President and Chief Operating Officer of TGE GP from March 2019 until November 2019 and as Executive Vice President and Chief Operating Officer of TGE GP from February 2015 until March 2019.

11. Defendant Marcelino Orejo Arburua ("Arburua") has been a director of TGE GP since March 2019.

12. Defendant Guy G. Buckley ("Buckley") has been a director of TGE GP since March 2019.

13. Defendant Roy N. Cook ("Cook") has been a director of TGE GP since September 2018.

14. Defendant Thomas A. Gerke ("Gerke") has been a director of TGE GP since August 2015.

15. Defendant Wallace C. Henderson ("Henderson") has been a director of TGE GP since March 2019. Defendant Henderson has served as a Senior Managing Director at Blackstone since January 2018.

16. Defendant Matthew J.K. Runkle ("Runkle") has been a director of TGE GP since March 2019. Defendant Runkle has served as a Managing Director at Blackstone since October 2017.

17. Defendant Terrance D. Towner ("Towner") has been a director of TGE GP since September 2018.

18. Defendants identified in paragraphs 10 to 17 are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

19. Blackstone is a leading global investment business investing capital on behalf of

pension funds, large institutions and individuals. Blackstone's asset management businesses, which has $545 billion in assets under management, includes investment vehicles focused on private equity, real estate, public debt and equity, non-investment grade credit, real assets, and secondary funds.

20.     Enagás is Spain's leading natural gas transmission company and Technical Manager of the Spanish gas system. It has approximately 12,000 kilometers of gas pipelines, three underground storage facilities, and four regasification plants.

21.     TGE GP is a Delaware limited liability company and the general partner of Tallgrass.

22.     Buyer is a Delaware limited partnership and an affiliate of the Sponsors.

23.     Buyer Sub is a Delaware limited liability company and wholly owned subsidiary of Buyer.

<b><u>SUBSTANTIVE ALLEGATIONS</u></b>

**Tallgrass Background**

24.     Tallgrass is a limited partnership that owns, operates, acquires, and develops midstream energy assets in North America. Tallgrass's operations are conducted through the its subsidiaries, including Tallgrass Equity, in which Tallgrass directly owns an approximate 55.79% membership interest. Tallgrass is located in and provides services to certain key U.S. hydrocarbon basins, including the Denver-Julesburg, Powder River, Wind River, Permian and Hugoton-Anadarko Basins and the Niobrara, Mississippi Lime, Eagle Ford, Bakken, Marcellus, and Utica shale formations. Tallgrass's reportable business segments are Natural Gas Transportation, Crude Oil Transportation, and Gathering, Processing & Terminalling.

25.     On July 11, 2019, Tallgrass announced its quarterly dividend for the second quarter of 2019 of $0.5400 per Class A share, or $2.16 on an annualized basis. This represents a 1.9%

sequential increase from the first quarter of 2019 dividend and an 8.5% increase from the second quarter of 2018 dividend.

26. On July 25, 2019, Tallgrass announced its second quarter 2019 financial results in which then-CEO David Dehaemers Jr. ("Dehaemers"), stated:

> In the second quarter we placed the Iron Horse Pipeline in-service and completed construction of the Grasslands Terminal, further expanding our crude oil service offerings for customers in the Powder River and Denver-Julesburg basins. . . . Also, with the integration of our previously announced Q2 acquisition of water infrastructure assets in the Marcellus and Utica, we now offer water services as a value-added service offering to our customers in each of the basins we currently serve with natural gas and crude oil transportation. These accomplishments, along with our operations team's tireless efforts to safely and efficiently operate our assets, contributed to another outstanding quarter of financial performance.

27. On October 30, 2019, Tallgrass announced its third quarter 2019 financial results in which then-CEO Dehaemers stated, "Our business units continued to deliver strong operational performance for the third quarter of 2019, driving another outstanding quarter at TGE."

**The Proposed Transaction**

28. On December 17, 2019, Tallgrass issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> LEAWOOD, Kan.--(BUSINESS WIRE)-- Tallgrass Energy, LP (NYSE: TGE) today announced that it has entered into a definitive merger agreement pursuant to which affiliates of Blackstone Infrastructure Partners together with affiliates of Enagas, GIC, NPS and USS (collectively with Blackstone Infrastructure Partners, the "Sponsors") will acquire all of the publicly-held outstanding Class A Shares of TGE for $22.45 in cash per Class A Share.
>
> The transaction is expected to close in the second quarter of 2020, subject to the satisfaction of customary conditions, including approval of the merger by holders of a majority of the outstanding Class A and Class B Shares of TGE, voting together as a single class, inclusive of the approximately 44 percent of the total Class A and Class B Shares held by the Sponsors. Upon closing of the transaction, the Class A Shares will cease to be publicly traded. Pursuant to the merger agreement, TGE has agreed not to pay distributions during the pendency of the transactions contemplated by the merger agreement.

> The Conflicts Committee of the Board of Directors of Tallgrass Energy GP, LLC, TGE's General Partner ("TGE GP"), after consultation with its independent legal and financial advisors, unanimously approved the transaction and determined it to be in the best interests of TGE and its public shareholders.
>
> The Sponsors expect to fund the purchase of the Class A Shares with approximately $3 billion of equity, with the remainder of the funding necessary to consummate the transaction provided by debt.

**The Proxy Statement Contains Material Misstatements or Omissions**

29.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Tallgrass's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for Tallgrass's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

30.     Specifically, as set forth below, the Proxy Statement fails to provide Tallgrass stockholders with material information or provides them with materially misleading information concerning: (i) Tallgrass management's financial projections; and (ii) the data and inputs underlying the valuation analyses performed by the conflicts committee of the Board's financial advisor, Evercore.

*Material Omissions Concerning the Limited Partnership's Financial Projections*

31.     The Proxy Statement omits material information regarding Tallgrass management's financial projections.

32.     Critically, the Proxy Statement completely omits the after-tax cash flows to be received by Tallgrass based on the Historical Growth Capital Expenditure Case utilized by Evercore in its *Corporate Level—Discounted Cash Flow Analysis* as well as the cash flows for each segment of Tallgrass underlying Evercore's *Sum of the Parts—Discounted Cash Flow Analysis*.

33. Additionally, the Proxy Statement fails to disclose the line items underlying Tallgrass's after-tax cash flows and adjusted EBITDA.

34. The omission of this information renders the statements in the "Certain Financial Projections" and "Opinion of Evercore—Financial Advisor to the Conflicts Committee" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Evercore's Financial Analyses*

35. The Proxy Statement describes Evercore's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Evercore's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Tallgrass's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Evercore's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

36. With respect to Evercore's *Corporate Level—Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the after-tax free cash flows of Tallgrass utilized by Evercore in the analysis; (ii) the metric the perpetuity growth rates were applied to in order to derive Tallgrass's terminal value and quantification thereof; (iii) Tallgrass Development distributions (net of contributions and preferred interest) for 2019 to 2027; (iv) debt and cash projected as of January 1, 2020; (v) the number of outstanding Class A shares projected as of January 1, 2020; and (vi) quantification of the inputs and assumptions underlying the discount rates of 6.50% to 7.50%.

37. With respect to Evercore's *Corporate Level—Discounted Dividend Analysis*, the Proxy Statement fails to disclose: (i) Evercore's basis for utilizing a terminal yield range of 8.0% to 12.0%; (ii) the metric the terminal yield range was applied to and quantification thereof; and

(iii) quantification of the inputs and assumptions underlying the cost of equity range of 7.50% to 8.50% and cost of equity range of 11.0% to 13.0% based on the total expected market return.

38. With respect to Evercore's *Corporate-Level Analysis of Peers—Corporations / MLPs*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected corporations and MLPs analyzed by Evercore.

39. With respect to Evercore's *Sum of the Parts—Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose the assumptions and inputs regarding the respective: (i) terminal values; (ii) estimated range of EBITDA exit multiples; (iii) range of discount rates; and (iv) range of perpetuity growth rates.

40. With respect to Evercore's *Sum of the Parts—Precedent M&A Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the transactions analyzed by Evercore.

41. With respect to Evercore's *Sum of the Parts—Peer Group Trading Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the corporations and partnerships analyzed by Evercore.

42. The omission of this information renders the statements in the "Opinion of Evercore—Financial Advisor to the Conflicts Committee" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

43. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Tallgrass stockholders

will be unable to make an informed voting decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder

44. Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

45. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46. By virtue of their positions within the Limited Partnership and TGE GP, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Tallgrass management's financial projections and the data and inputs underlying the valuation analyses performed by the conflicts committee of the Board's financial advisor, Evercore. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

48. By reason of the foregoing, the defendants have violated Section 14(a) of the

Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

50. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

51. The Individual Defendants acted as controlling persons of Tallgrass within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Tallgrass or TGE GP and participation in and/or awareness of the Tallgrass's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Tallgrass, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Limited Partnership, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the

unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

54.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

55.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Tallgrass's stockholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against defendants as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: February 11, 2020

Respectfully submitted,

/s/ Richard A. Acocelli
Richard A. Acocelli
**WEISSLAW LLP**
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*